there was an implied authority. It was therefore the right of the defendants to offer evidence tending to show that there was no implied authority. As has been seen, there could only be an implied authority here, if it be the custom for agents to warrant the value of stocks when he makes a sale of such securities. The defendants attempted to prove that there is no such custom. The trial court rejected this evidence. This was error. The learned trial court, in ruling upon this question, stated that the burden was not upon the defendants to make such proof. But in view of the only possible theory on which the denial of the nonsuit could have been based, namely, that the agent had implied authority to warrant, the duty was on the defendants to offer proof that there was no implied authority. The trial court refused to let the defendants do so, and this was error.

[3] There is no question of ratification here. There can be no ratification by the principal of the acts of the agent, unless the principal has full knowledge of the facts. In this case the defendants had absolutely no knowledge that the agent had given a warranty, such as is alleged in the complaint, or any warranty whatever.

For these reasons, the judgment and order should be reversed, and a new trial granted. All concur.

---

(165 App. Div. 224)

KOSTER v. CONEY ISLAND & B. R. CO.

(Supreme Court, Appellate Division, Second Department. December 24, 1914.)

1. STREET RAILROADS (§ 117*)—INJURY TO DRIVER OF VEHICLE—NEGLIGENCE OF MOTORMAN—QUESTION FOR JURY.

Under the evidence, in an action by the driver of a wagon for injuries from a collision with a street car, held, that the question of defendant's negligence was for the jury.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 239–257; Dec. Dig. § 117.*]

2. STREET RAILROADS (§ 117*)—COLLISION—NEGLIGENCE—QUESTION FOR JURY.

An error of judgment by a motorman as to the time when he must apply sand and brakes on a rainy day, to avoid a collision, is not negligence as a matter of law.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 239–257; Dec. Dig. § 117.*]

Appeal from Queens County Court.

Action for injuries by George Koster against the Coney Island & Brooklyn Railroad Company. Judgment for plaintiff, defendant appeals. Reversed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and RICH, JJ.

D. A. Marsh, of Brooklyn, for appellant.

Martin T. Manton, of New York City (Vine H. Smith, of New York City, on the brief), for respondent.

RICH, J. This appeal is from a judgment of the County Court of Queens County in an action for personal injuries. The accident was

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the result of a collision between a delivery wagon and one of defendant's trolley cars at a street crossing.

The learned trial court charged the jury that in the operation of its car the defendant was negligent as matter of law, and that if they found the plaintiff free from contributory negligence, and that he was actually injured as the result of the collision, he was entitled to a verdict. To this portion of the charge an exception was taken, whereupon counsel for the plaintiff informed the court that he was willing to have the jury determine as a question of fact whether or not the motorman was careless in the operation of the car, and the court responded:

"When I charge what the law is, I have to charge what I understand is the law, and I will stand on it."

The exception to this charge presents the only serious question before the court upon this appeal.

[1] The accident occurred between 3 and 4 o'clock in the morning of July 18, 1913. It was wet and misty, and the rails were slippery. It was contended by the plaintiff that the failure to stop the car before it collided with the wagon in which plaintiff was riding was due to the inexperience of one of defendant's conductors, who was permitted to operate it, and the testimony of two witnesses who were passengers on the car was to the effect that at the time of the accident a conductor was running the car. This fact was denied by the conductor and motorman, and by a conductor of defendant not employed on the car, but who happened to be riding with the motorman on the front platform. If the jury believed the testimony of the motorman and two conductors, they would have been justified in finding that the car was being operated at the time of the collision by an experienced and regular motorman, who, in the middle of the block, about 100 feet from the corner, where the downgrade commenced, shut off the power, and by so doing reduced the speed of the car to 4 or 5 miles an hour; that he was vigilant and attentive, and saw the plaintiff's rig as soon as it came into his line of vision, at which time the car was about 25 feet from the building line of the intersecting street, and, immediately observing the possibility of a collision, used all the means at his command to stop the car, in which effort the employé riding on the front platform assisted by sanding the rails; that when the brake was applied the car wheels skidded because of the wetness of the rails, and the motorman, then realizing that he could not stop the car in time to avoid a collision, sounded his gong and shouted to the plaintiff to inform him that he could not stop the car, to which he paid no attention; that the horse was then approaching the crossing on a trot, which gait he kept until he reached and was upon the track, when the fender of the car struck his legs and he was thrown sideways into it; that the motorman had physical control of his car, and could and would have avoided the accident, had the rails been dry, but in consequence of being wet and slippery neither the brakes nor sand stopped it in time, and that the slippery condition of the rails was the proximate cause of the accident.

[2] The precise point on the downgrade at which the power should have been shut off and· brakes applied involved the exercise of judgment on the part of the motorman, and if, in determining such question, he made the mistake of not taking into consideration the wet and slippery condition of the rails, it was a mistaken exercise of judgment, not necessarily constituting negligence or establishing defendant's liability. Lewis v. Long Island R. R. Co., 162 N. Y. 52, 56 N. E. 548; Stabenau v. Atlantic Avenue R. R. Co., 155 N. Y. 511, 50 N. E. 277, 63 Am. St. Rep. 698; Bittner v. Crosstown Railway Co., 153 N. Y. 76, 46 N. E. 1044, 60 Am. St. Rep. 588. It was for the jury to say, under the evidence, whether in the operation of its car the defendant's motorman was negligent. Different inferences could reasonably be drawn from the evidence as to whether the motorman had exercised that degree of care which the law required of a reasonably prudent and careful person discharging the duties of a motorman operating a trolley car, which made the question of defendant's negligence one of fact for the jury, instead of one of law to be determined by the court. Stackus v. N. Y. C. & H. R. R. R. Co., 79 N. Y. 464; Salter v. Utica & Black River R. R. Co., 88 N. Y. 42, 51; Sias v. Rochester Ry. Co., 169 N. Y. 118–126, 62 N. E. 132, 56 L. R. A. 850; Weil v. D. D., E. B. & B. R. R. Co., 119 N. Y. 147, 153, 23 N. E. 487.

·The judgment and order of the County Court of Queens County must be reversed, and a new trial ordered; costs to abide the event.

JENKS, P. J., and BURR and THOMAS, JJ., concur. CARR, J., not voting.