Alice Kirk et al., Respondents, *v.* Thomas J. Magee et al., Appellants.

First Department, May 8, 1956.

*James E. Whalen* for Thomas J. Magee, appellant.

*John A. Murray* of counsel (*Seymour B. Quel* with him on the brief; *Peter Campbell Brown, Corporation Counsel,* attorney), for City of New York, appellant.

*William S. Evans* of counsel (*Leo Isacson,* attorney), for respondents.

BERGAN, J. Liability has here been imposed on appellant City of New York because the driver of a fire department pumper, responding to an alarm of fire, failed to take precaution to prevent a vehicle coming from an intersecting street from running into the side of the apparatus. We think the decision holding the city to have been negligent is against the weight of the evidence.

The traffic light at the intersection was red for the fire apparatus; green for the other vehicle coming into the intersection. Nevertheless, the fire apparatus, responding to an alarm, had the right of way. (Traffic Regulations of N. Y. City Comr. of Traffic, art. 5, § 78.) This section gives preference to vehicles of the fire department " when going to * * * a fire or an alarm."

Corollary to this right of way is the imposition of an affirmative duty on drivers of other vehicles by section 80 of the same article. Upon " the immediate approach " of fire apparatus when an audible signal is being given by bell, another vehi-

cle shall "yield the right of way"; the operator shall bring the vehicle to a stop parallel to a curb, and as near the curb as possible and stay there until the fire apparatus "has passed". The vehicle thus stopped must be kept "clear of any intersection". This section does not relieve the driver of the fire apparatus from a duty "to drive with due regard for the safety" of all persons using the street.

The proof is abundant in support of the court's finding that as the pumper approached the intersection late at night its fire bell was being rung; four headlights, two of them red, were lighted in front; and on the top of the cab a revolving red light was on, and in turning operation. This light threw a beam about 200 feet. A civil defense regulation operative at that time forbade the use of sirens on this type of equipment.

The fireman-driver testified the fire truck was proceeding at 10 to 12 miles an hour; but even if the suggestion on his cross-examination that he had testified in Magistrate's Court that it was going 20 miles an hour be accepted, that speed was not excessive for fire equipment answering an alarm; and there is no proof anywhere in the record to suggest excessive speed of the fire truck or that its rate of speed played any part in the occurrence of the accident.

The fire pumper was justified in proceeding through this intersection on its way to the fire. Since the warning required by the traffic regulations was being given, the defendant Magee, operating the vehicle coming into the intersection, was required to bring that vehicle to a full stop at the curb and required not to come within the intersection until the fire pumper "had passed".

Defendant Magee testified that he first noticed the fire truck when he was from 10 to 15 feet from the corner at the intersection and that the truck was then about 10 feet from the line of the curb at the intersection. Magee estimated that his car traveled 40 feet from the point he first saw the fire truck until he ran into it. He had been traveling at 25 miles an hour. He applied his brakes which he said did not give much reaction and he felt the car "sliding" under him and into the fire truck. Magee testified he told a fireman after the accident that "I hadn't seen him until it was too late". His brakes did not hold, although they had worked properly earlier in the evening. The point of collision was midway at the side of the truck at the suction intake.

The fireman driving the pumper truck testified that he first saw defendant Magee's car when the truck had reached the building line of the intersecting street and that Magee's car was then 50 or 60 feet from the curb of the street on which the fire

truck was moving and was approaching the intersection. He said he " sort of watched him for a second or two " and continued on through the intersection. He did not " watch him continuously ".

This is not a case where the operator of the fire apparatus is confronted with an actual and apparent danger in his path which in the exercise of reasonable care he would be required to avoid if he could. It is not a case where a pedestrian walking across a street in view of the driver of the fire equipment, and waved on by a policeman, was run down by the fire apparatus, such as that considered in *Zagelbaum* v. *City of New York* (302 N. Y. 793); nor is it a case where the emergency vehicle was proceeding at high speed and without warning (*Thayer* v. *City of New York,* 293 N. Y. 801). The fire truck here was operated in accordance with traffic regulations and the requirements of statute and of rule. It did not strike anything. It proceeded into the intersection and was struck.

There can be little doubt that as both vehicles proceeded into the intersection, the continuance of the fire truck, having the right of way, was not in itself negligence (*Milstrey* v. *Schenectady Ry. Co.,* 276 App. Div. 1039); and if its bell was being rung it had the right to continue notwithstanding the traffic control light (*County of Broome* v. *Binghamton Taxicab Co.,* 276 App. Div. 438).

The driver of the fire truck was certainly not required to watch Magee's vehicle to ascertain whether its brakes would hold. Liability could no more reasonably be imposed for a failure to foresee that Magee's brakes would not stop his car than it could be imposed for the failure of the fireman-driver to anticipate which way the private vehicle would turn in the intersection collision considered in *Garrett* v. *City of Schenectady* (268 N. Y. 219). The fireman there, " doing a lawful act " as Judge LOUGHRAN noted (p. 223), could not as a matter of law be deemed at fault " because of his want of prevision of what was in plaintiff's mind."

The fireman-driver and Magee are in agreement on one important aspect of the accident; that it would be expected the Magee car would be able to stop, and would stop, to allow the fire pumper to proceed. Magee expected to stop; and the fireman-driver was certainly justified in the same expectation.

Magee failed to stop because his brakes did not hold and he slid into the side of the fire truck. It is enough to charge him with responsibility for this. It goes very far, indeed, to charge the fireman, too, with such a responsibility; and through him the city. No fireman in the discharge of duty in operating fire

equipment could be expected to meet any such burden of extreme caution or of apprehension in the absence of some danger signal. He had the right, at least, to expect that the other driver would let his fire equipment pass without running into the side of it.

We are of opinion, therefore, that the decision for plaintiffs against the city is against the weight of the evidence. In this view of the case we assume that the question whether the fireman-driver should have watched the Magee vehicle more closely as they both came into the intersection, and have been ready to turn away if it seemed not to be able to stop is an open question of fact.

It is not easy to accept the argument pressed in the respondents' brief that he '' could have '' stopped within 30 feet and still given Magee 15 feet in which to continue, or he '' could have '' swerved left, easterly, on the intersecting street, and these arguments must be considered in the light of the policy in respect of the right of fire apparatus to get on to a fire discussed in *Garrett* v. *City of Schenectady* (*supra*) and to proceed in priority to other traffic. The drivers of fire apparatus cannot usually be required to make sure that other vehicles are stopped before they continue on. We leave this question open, however, to the fresh judgment of the court on the facts on the new trial. We regard the verdict of $7,500 in favor of plaintiff Rita Kirk excessive in the light of proof of her injuries.

The judgment in favor of all plaintiffs against defendant City of New York should be reversed, on the law and the facts, and a new trial ordered on the ground the decision is against the weight of the evidence; the judgment in favor of plaintiff Rita Kirk against defendant Magee should be reversed, on the law and the facts, as excessive and a new trial ordered unless such plaintiff stipulates to reduce the same to $3,500 and if such stipulation is filed such judgment should be affirmed; the judgment against Magee should otherwise be affirmed.

FRANK, J. (concurring in result). I concur in the result but for reasons other than those assigned in the majority opinion.

In this case, the plaintiffs recovered judgment against both defendants. They were passengers in a car driven by defendant Magee which collided with a fire truck owned by the defendant City of New York in the intersection of 142nd Street and Willis Avenue, borough of The Bronx, city of New York.

There is no question that plaintiffs were entirely free from any fault contributing to the accident.

While it is true that the fire truck had the right of way, despite the red light at the intersection set against traffic

proceeding in the same direction, it does not follow that the operator of that vehicle was completely relieved from the duty of exercising reasonable care. Assuming *arguendo* that Magee's negligence was almost gross, it would not serve to relieve the city from equal liability to the innocent plaintiffs, if its agent was also negligent, although in a much lesser degree.

The right of way rule extended to a fire vehicle by the Vehicle and Traffic Law (§ 82) contains the following limitation: " but this shall not relieve the driver &ast; &ast; &ast; of any such vehicle from liability for injuries inflicted in consequence of the arbitrary or careless exercise of this right."

The Traffic Regulations of the New York City Commissioner of Traffic (§ 80) contain a similar provision: " This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the street."

The trial court in evaluating the testimony of the fireman operating the fire pumper found, " the driver did not exercise his judgment at all. He did nothing, he did not look, he did not stop, did not turn." " The driver in failing to earlier observe the conditions in One Hundred and Forty-second Street was doing exactly what the statutes and the law says he may not do; he was arbitrarily and recklessly relying on the right of way of the fire apparatus and not exercising care; he failed to look into the one street he should have observed, the one that had the green light, the only source of possible interference; &ast; &ast; &ast; and it was his duty to observe dangers as soon as possible, particularly while passing a red light, knowing as he must that an oncoming driver would rely upon the green signal set for him ".

The credibility of this witness was in issue. There was conflict in his testimony on the trial as compared with his testimony in the Magistrate's Court. While we might reach a different conclusion with respect to the proof adduced at the trial, there was a question of fact and there may be sufficient in the record to sustain the finding of the trier of the facts. (See *Lee* v. *City Brewing Corp.*, 279 N. Y. 380, 388, and *Shea* v. *Judson*, 283 N. Y. 393, 398.) We should not substitute our conclusion for that of the trial court.

The right of way rule does not obliterate the requirement to exercise reasonable care under the circumstances present at the time (*Farrell* v. *Fire Ins. Salvage Corps,* 189 App. Div. 795, 800; *Muhs* v. *Fire Ins. Salvage Corps,* 89 App. Div. 389; *Kosowsky* v. *Coller,* 227 App. Div. 740).

458

While I agree that an error in judgment or " want of pre-vision " does not *ipso facto* impose liability, a charge of negligence cannot be summarily brushed aside by mere proof that an actor erred in judgment (*Van Ingen* v. *Jewish Hosp.,* 182 App. Div. 10, 14).

It appears to me, therefore, that we cannot reverse the determination of the court below. and order a new trial upon the ground that the judgment is, as a matter of law, against the weight of the evidence.

The reversal should be predicated upon the ground that the learned court below erred in making inconsistent findings which we cannot correct. These contrary findings deal with the testimony of the operator of the fire truck, and as heretofore stated, his credibility was in question. The court below concluded that the driver did observe intersecting traffic when his vehicle arrived at a certain point, and then in another part of his decision held that the fireman did not look at all. We cannot determine from the record which is correct.

The judgment insofar as the City of New York is concerned should, therefore, be reversed and a new trial ordered.

Peck, P. J., Breitel and Botein, JJ., concur with Bergan, J.; Frank, J., concurs in the result in opinion.

Insofar as the judgment is in favor of all plaintiffs against the defendant the City of New York, it is unanimously reversed and a new trial ordered, with costs to said appellant to abide the event, on the ground that the decision is against the weight of the evidence; insofar as the judgment is in favor of the plaintiff Rita Kirk against the defendant Magee, it is unanimously reversed and a new trial ordered, with costs to said appellant to abide the event, on the ground of excessiveness, unless said plaintiff stipulates to reduce the judgment to the sum of $3,500 in which event that part of the judgment in favor of the plaintiff Rita Kirk against the defendant Magee, as so modified, is affirmed, without costs; the judgment against the defendant Magee is otherwise affirmed. Settle order on notice.